UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

GLEN CRAIG

              Plaintiff,

      -against-

GETTY IMAGES (U.S.), INC., CNN AMERICA
INC., NBCUNIVERSAL MEDIA, LLC,
AMERICAN BROADCASTING COMPANIES,
INC., CBS NEWS, INC., FOX NEWS NETWORK,
LLC, MSNBC CABLE L.L.C., BBC
WORLDWIDE AMERICAS, INC.,
CONDÉ NAST ENTERTAINMENT LLC,
HEARST COMMUNICATIONS, INC.,
PROMETHEUS GLOBAL MEDIA, LLC,
ROLLING STONE LLC, TIME, INC.,
THE NEW YORK TIMES COMPANY,
BLOOMBERG L.P., NEW YORK
DAILY NEWS COMPANY, OATH, INC.
INFINITY 1 INCORPORATED and
REDBUBBLE, INC.

              Defendants.
-------------------------------------------------------------X

Civil Case No.

**COMPLAINT**

**JURY TRIAL DEMANDED
PURSUANT TO F.R.C.P. 38**

       Plaintiff, Glen Craig ("Craig"), by and through his undersigned counsel, as and for his

Complaint against Defendants, Getty Images (US), Inc. ("Getty"), CNN America Inc. ("CNN"),

NBCUniversal Media, LLC ("NBC"), American Broadcasting Companies. Inc. ("ABC"), CBS

News, Inc. ("CBS News"), Fox News Network, LLC ("Fox News"), MSNBC Cable L.L.C.

("MSNBC"), ESPN, Inc. ("ESPN"), BBC Worldwide Americas, Inc. ("BBC Worldwide"),

Condé Nast Entertainment LLC ("Condé Nast"), Hearst Communications, Inc. ("Hearst"),

Prometheus Global Media, LLC ("Prometheus"), Rolling Stone LLC ("Rolling Stone"), Time,

Inc. ("Time"), The New York Times Company ("The New York Times"), Bloomberg L.P.

("Bloomberg"), New York Daily News Company ("New York Daily News"), Oath, Inc.

("Oath") Infinity 1 Incorporated ("Infinity 1") and Redbubble, Inc. ("Redbubble"), hereby

alleges as follows:

## Nature of Action

1.      This is a civil action for damages for copyright infringement under the U.S. Copyright Act (17 U.S.C. § 101 *et seq.*) (the "Copyright Act").  The action arises out of Getty's unauthorized reproduction, sale and public display of twelve (12) photographs authored and owned by Craig as well as unauthorized reproductions by the other named Defendants.  Craig seeks monetary and injunctive relief as afforded under the Copyright Act.

## Jurisdiction and Venue

2.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§§ 1331, 1338 and 1367.

3.      Venue is proper in this District under 28 U.S.C. § 1391 (b) and (c) in that a substantial part of the acts of infringement complained of herein occurred in New York and in this District and the Defendant conducts business in New York and this District.

## The Parties

4.      Craig is an individual that resides at 30-60 Crescent St., Apt. 2C, Astoria, NY 11102.

5.      Getty is a New York corporation with a principal place of business located at 75 Varick St., 5th Floor, New York, NY 10013.  Getty owns and operates the online stock photo agency Getty Images and its website at www.gettyimages.com.

6.      CNN is a Delaware corporation with a principal place of business located at One Time Warner Center, New York, NY 10019.  CNN owns and operates the 24-hour cable news network *CNN* and its website www.cnn.com.

7.      NBC is a Delaware limited liability company with a principal place of business located at 30 Rockefeller Plaza, New York, NY 10112.  NBC is a commercial broadcast

television network that airs or has aired television programs such as *NBC News* and *The Meredith Viera Show*. NBC also owns and operates the website www.nbcnews.com.

8.      ABC is Delaware corporation with a principal place of business located at 77 W. 66th St., New York, NY 10023. ABC is a commercial broadcast television network that airs the television news program *ABC News* and owns and operates the website www.abc.go.com.

9.      CBS News is a Delaware corporation with the principal place of business located at 51 W. 52nd St., New York, NY 10019. CBS News owns and operates the television news program *CBS News* and the website www.cbsnews.com.

10.     Fox News is a Delaware corporation with a principal place of business located at 1211 Avenue of Americas, New York, NY 10036. Fox News owns and operates the cable news channel *Fox News* and the news website www.foxnews.com. Fox News previously aired the current affairs program *On the Record w/ Greta Van Susteran* from 2012 to 2016.

11.     MSNBC is a Delaware limited liability company with a principal place of business located at 30 Rockefeller Plaza, New York, NY 10112. MSNBC owns and operates the cable news channel *MSNBC* and the online news website www.msnbc.com.

12.     BBC Worldwide is a Delaware corporation with a principal place of business located at 1120 Avenue of Americas, 5th Floor, New York, NY 10036. BBC Worldwide owns and operates the cable news channel BBC, the news website www.bbc.com.uk and the social media accounts for BBC Radio.

13.     Condé Nast is a Delaware limited liability company with a principal place of business located at One World Trade Center, 44th Floor, New York, NY 10007. Condé Nast owns and operates the publications: (i) *The New Yorker*, and its website www.thenewyorker.com; and (ii) *GQ Magazine* and its related social media accounts.

14.     Hearst is a Delaware corporation with a principal place of business located at 300 W. 57th St., New York, NY 10019.  Hearst owns and operates the publication *Esquire* magazine and its website www.esquire.com.

15.     Prometheus is a Delaware limited liability company with a principal place of business locate at 770 Broadway, 15th Floor, New York, NY 10003.  Prometheus owns and operates the publication *Billboard* magazine and its website www.billboard.com.

16.     Rolling Stone is a Delaware limited liability company with a principal place of business located at 1290 Avenue of Americas, New York, NY 10104.  Rolling Stone owns and operates the biweekly magazine *Rolling Stone* and its website www.rollingstone.com.

17.     Time is a Delaware corporation with a principal place of business located at 225 Liberty St., New York, NY 10281.  Time owns and operates the publications: (i) *Time*, and its website www.time.com; and (ii) *Entertainment Weekly* and its website www.ew.com.

18.     The New York Times is a New York corporation with a principal place of business located at 620 8th Ave., New York, NY 10018.  The New York Times owns and operates the daily newspapers *The New York Times* and *The New York Times International Edition* and the website www.nytimes.com.

19.     Bloomberg is a Delaware limited partnership with a principal place of business located at 731 Lexington Ave., New York, NY 10022.  Bloomberg owns and operates *Bloomberg News* and its website www.bloomberg.com.

20.     New York Daily News is a New York corporation with a principal place of business located at 220 E. 42nd St., New York, NY 10017.  New York Daily News owns and operates the daily newspaper *New York Daily News* and its website www.nydailynews.com.

21.     Oath is a Delaware corporation with a principal place of business located at 770

Broadway, New York, NY 10003.  Oath owns and operates Yahoo! News and its website
www.yahoo.com.

22.   Infinity 1 is a Minnesota corporation with a principal place of business located at
1674 Lake Drive W., Chanhassen, MN 55317.  Infinity 1 owns and operates the online apparel
company, Rockabilia and its website www.rockabilia.com.  Upon information and belief, Infinity
1, through Rockabilia, conducts significant sales of apparel in the State of New York, including
in this district.

23.   Redbubble is a Delaware corporation with a principal place of business located at
111 Sutter Street, 17th Floor, San Francisco, CA 94104.  Redbubble owns and operates the online
apparel company, Redbubble and its website www.redbubble.com.  Upon information and belief,
Infinity 1, through Rockabilia, conducts significant sales of apparel in the State of New York,
including in this district.

**Factual Background**

24.   Craig is a renowned music photographer whose career has spanned over five
decades.  The musicians that Craig has photographed and, in some cases, maintained close
personal relationships with, are legendary, including, the Beatles, the Rolling Stones, The Who,
The Doors, B.B. King, Miles Davis, James Brown, Eric Clapton, Jerry Lee Lewis, Tina Turner,
Aretha Franklin, Chuck Berry, Little Richard, among others.

25.   Craig has earned significant distinction for his work.  Craig was awarded
Photokina's distinguished photographer of the year award in 2014.  That same year, Craig was
chosen as one of only two photographers to represent the U.S. in an exhibition concerning the
history of music photographer curated by high-end camera giant, Leica.  Craig is currently
represented by the Morrison Hotel Gallery in New York and Los Angeles, which specializes in

historical music photography.  He earns his living through licensing and exploitation of images in his important photographic archive.

26.     In 1970, Craig met the musician B.B. King and began working with him on a series of photoshoots both in the U.S. and in Japan.  Craig photographed numerous B.B. King performances along with more intimate, behind-the-scenes portraits of the musician.  The results of these sessions yielded iconic photographs of important historical significance.

27.     Later that same year, Craig supplied a portfolio of photographic prints to Changes Magazine ("Changes") that included photographs of B.B. King (the "Submission").  Craig never worked for Changes as a photographer nor was the Submission created as a work-made-for-hire. Craig only provided pre-existing photographs to Changes for.  Craig submitted the photographic prints to Changes with a stamp of his name, status as the photographer and contact information on each photographic print.  At all times, Craig remained owner in the copyrights of the photographs that were part of the Submission.

28.     The Submission was delivered to Change's art director, Ruby Mazur ("Mazur"), who worked with Craig to create a layout of B.B. King photographs that would appear in Changes in June of 1970.  The photographs from the Submission that remained unpublished (i.e. the "Unpublished B.B. King Photographs") remained in the possession of Mazur and Changes. Craig requested that these photographs, which had his name and return information, be returned to him, but this request was ignored, and the photographs were never returned.

29.     At no time before or after his collaboration with Changes, did Craig ever himself publish or permit or third party to publish the Unpublished B.B. King Photographs.

30.     In late 1970 to 1971, Mazur departed from Changes as art director and assumed the same position at ABC-Dunhill Records ("ABC-Dunhill"), which represented B.B. King.

31.    Upon information and belief, Mazur, without Craig's knowledge or consent, took to ABC-Dunhill the Unpublished B.B. King Photographs he had obtained during his tenure with Changes since several of the Unpublished B.B. King Photographs appeared in B.B. King tour books distributed by ABC-Dunhill.

32.    Upon information and belief, the only person that had access to the Unpublished B.B. King Photographs for to use them in the creation of the ABC-Dunhill tour books for B.B. King was Mazur.  Upon information and belief, Mazur, without Craig's knowledge or consent, passed the spread that appeared in Changes and the Unpublished B.B. King Photographs along to B.B. King's manager, Sidney "Sid" Seidenberg ("Seidenberg") to be used by B.B. King Management and ABC-Dunhill for use in the tour books and other collateral uses by Seidenberg.

33.    It has recently come to Craig's attention that ABC-Dunhill also used the Unpublished B.B. King Photographs as publicity stills during the 1970's (the "ABC-Dunhill Publicity Uses") without Craig's knowledge or consent.  A copy of at least eight (8) of the Unpublished Photographs used as publicity stills by ABC-Dunhill without any photo credit to Craig is attached hereto and fully incorporated herein as Exhibit 1.

34.    At no time did Craig ever give his consent for Mazur, ABC-Dunhill, Seidenberg or any other third party to use the Unpublished B.B. King Photographs for any purpose.  Nor was Craig ever aware of such uses until media coverage of B.B. King's failing health became more extensive beginning in January 2015.

**a.  Michael Ochs and The Michael Ochs Archive.**

35.    At the same time Mazur was the art director at ABC-Dunhill another individual, Michael Ochs ("Ochs"), was employed at the record label in the public relations department. Ochs was never employed as a photographer with ABC-Dunhill, nor is there any evidence to

suggest that Ochs, at any time, was ever a photographer by profession.

36.     Prior to and during his employment with ABC-Dunhill, Ochs began the acquisition of historical music print stills (the "Ochs Photographs") that would eventually comprise the Michael Ochs Archive (the "Ochs Archive").  The acquisition of the Ochs Photographs took place over a 40-year period and included publicity prints of over three million images. The Ochs Archive consisted of physical prints and, upon information and belief, did not own any copyrights in any of the images contained within the Archive.  Photographs were originally created by other photographers, not Ochs.

37.     Upon information and belief, Ochs appears to have only obtained ownership rights over the physical prints, not the copyright.  Most of the Ochs Photographs were simply obtained by salvaging physical copies of unpublished photographs stored in files of defunct record labels.[1]  In fact, Ochs was widely known for "dumpster diving" to obtain prints that did not belong to him from record labels such as A&M, Atlantic Records, Columbia Records, among others.

38.     The historical significance of the Ochs Archive as a repository of images is widely recognized. *The New York Times* referred to the Ochs Archive as the "premier source of musician photographer in the world."[2]  In or about 2006, Ochs approached Corbis Images ("Corbis"), then a competitor of Getty in the stock photography industry, with an offer to sell the Ochs Archive.[3]  Corbis rejected the offer due to significant concerns as to whether Ochs was the actual owner of the copyrights of many of the Ochs Photographs for purposes of conveying such

---

[1] In fact, in a *New York Times* article from May 28, 2006, entitled, "They Had Faces Then: An Archives Keeps Stars Ever Young," the article notes that: "With tips from industry friends, [Ochs] would save troves of photographs from labels going under, occasionally rushing to empty file cabinets before the wrecking balls arrived."
[2] Article from *The New York Times* (May 28, 2006), entitled "They Had Faces Then: An Archives Keeps Stars Ever Young."
[3] As of 2016, Getty is now the exclusive distributor of Corbis, after Corbis's acquisition by a Chinese company, Visual China Group, that same year.

rights in any sale.

39.     Getty apparently did not have these same concerns.  In 2007, the Ochs Archive was reportedly sold to Getty for $4.2 million.  Upon information and belief, Getty knew or should have known that Ochs was not the copyright owner of most, if not all, of the Ochs Photographs and that he only retained physical copies of the works.  Notwithstanding this knowledge, Getty purchased the Ochs Archive and began licensing the reproduction rights to the archive's photographs to its customers for both commercial and editorial uses.

**b.   The Death of B.B. King and Subsequent Infringements.**

40.     Craig has obtained multiple copyright registrations related to the Unpublished B.B. King Photographs.  Specifically, on March 18, 2014, February 2, 2015, May 25, 2015, and February 3, 2016, Craig obtained Certificates of Registration from the U.S. Copyright Office, under Registration Nos. VAu 1-159-683, VAu 1-205-736, VAu 1-224-903 and VAu 1-265-351 respectively, for the Unpublished B.B. King Photograph (the "Registrations").  Copies of the Registrations and the Unpublished B.B. Kings Photos related to the Registrations are attached hereto and fully incorporated herein as Exhibit 2.  The Registration was obtained by Craig at the request of the Morrison Hotel Gallery, which requires its artists to copyright all photographic material prior to representing them.

41.     In October 2014, B.B. King was too ill to complete his music tour and cancelled the remaining shows.  B.B. King never performed again and on May 14, 2015 he died.  The publicity and news coverage surrounding B.B. King's illness and the seven months leading up to his death was considerable.  In late January 2015, Craig saw on *CNN* several of the Unpublished B.B. King Photographs appearing on televised news reports concerning the musician's health.

42.     From late January 2015 until B.B. King's death on May 14, 2015 and continuing

through today, various media outlets used several of the Unpublished B.B. King Photographs,

including Defendants:

       a.      CNN (online), as set forth on Exhibit 3;

       b.      NBC (via NBC News online and on television via *The Meredith Viera*

*Show*), as set forth on Exhibit 4;

       c.      ABC (via ABC News online), as set forth on Exhibit 5;

       d.      CBS News (online), as set forth on Exhibit 6;

       e.      Fox News (via Fox News online and on television via *On the Record w/*

*Greta Van Susteran*), as set forth on Exhibit 7;

       f.      MSNBC (online), as set forth on Exhibit 8;

       g.      BBC (online and social media), as set forth on Exhibit 9;

       h.      Condé Nast (via *The New Yorker* both print and online and *GQ Magazine*

social media), as set forth on Exhibit 10;

       i.      Hearst (via *Esquire* magazine online), as set forth on Exhibit 11;

       j.      Prometheus (via *Billboard* magazine online), as set forth on Exhibit 12;

       k.      Rolling Stone (print and online), as set forth on Exhibit 13;

       l.      Time, Inc. (via *Time* magazine online and *Entertainment Weekly* both

online and social media), as set forth on Exhibit 14;

       m.      The New York Times (via *The New York Times* print, online and mobile

and via The New York Times International Edition online), as set forth on Exhibit 15;

       n.      Bloomberg (via *Bloomberg News* online), as set forth on Exhibit 16;

       o.      New York Daily News (online), as set forth on Exhibit 17; and

       p.      Oath (via Yahoo! News online), as set forth on Exhibit 18.

q.    Infinity 1 (online), as set forth on <u>Exhibit 19</u>.

r.    Redbubble (online), as set forth on <u>Exhibit 20</u>.

43.    Starting in January 2015, Craig soon noticed that the Unpublished B.B. King Photographs being published by various media outlets were either credited to the "Michael Ochs Archive" or "Charlie Gillet Collection."[4]  Craig immediately focused his attention to Getty and, after reviewing its website, found that thirteen (13) the Unpublished B.B. King Photographs (the "Infringed B.B. King Photographs") were being licensed by Getty for both editorial and commercial uses.   A copy of the Infringed B.B. King Photographs, as they appear on Getty's website, is attached hereto and fully incorporated herein as <u>Exhibit 21</u>.

44.    At that point, it became evident to Craig, at least with respect to Ochs, that Ochs had likely obtained physical copies of the Infringed B.B. King Photographs during his employment with ABC-Dunhill without Craig's knowledge or consent.  For nearly four decades, Ochs kept the physical copies of the Infringed B.B. King Photographs in his archive, along with millions of other photographs, which he later sold to Getty in its acquisition of the Ochs Archive.

45.    Charlie Gillet's access and misappropriation of the Infringed B.B. King Photographs is less clear.  Upon information and belief, he very likely obtained the photographs due to his association with ABC-Dunhill as a BBC disc jockey and music author in the 1970's.  However, what is clear is that Charlie Gillet sold his physical copies of the Infringed B.B. King Photographs to Getty in the same manner as Ochs had done – without Craig's knowledge or consent and without any copyrights in the physical prints that he sold to Getty.

---

[4] Charlie Gillet was a popular disc jockey for the British Broadcasting Corporation (BBC).  Mr. Gillet was never known to be a photographer himself and, like Ochs, was an enthusiast for collecting and archiving physical copies of historical music photos taken by other photographers.  Whether and how Gillet obtained rights to these photographs from photographers is also unknown.

**c.  Craig's First Notice of Willful Infringement to Getty.**

46.    In September of 2014, Craig learned that one of the Infringed B.B. King
Photographs, known as the Star Photo, was being used in connection with a B.B. King 4-CD box
set released by AP Music.  Craig's attorney notified AP Music of the infringement by letter that
same month.  However, the response to this letter did not come from AP Music, but instead from
Getty.  Getty informed Craig that it had supplied AP Music with the Star Photo and that it saw no
basis to stop distributing it.  Craig's counsel reiterated his demand for an "immediate cessation"
of the Star Photo's use (the "First Notice").  A copy of the First Notice is attached hereto and
fully incorporated herein as Exhibit 22.

47.    Despite the First Notice, the distribution of the Star Photo by Getty did not stop.
As Getty continued to offer the Star Photo for license, Craig discovered shortly thereafter, in
January 2015, that Getty was also offering the remaining Infringed B.B. King Photographs to its
customers for both editorial and commercial uses.

48.    With respect to editorial uses, the Infringed B.B. King Photographs were
separately offered on Getty's website for license fees between $175.00 to $575.00, depending on
the format size preferred by the customer.  A screen capture of Getty's website featuring the
editorial fees related to one of the Infringed B.B. King Photographs is attached hereto and fully
incorporated herein as Exhibit 23.

49.    With respect to commercial uses, at least one of the Infringed B.B. King
Photographs was available for license on Getty's website for a fee ranging from $11,985.00 to
$15,400 related to product packaging, covers and tags (the "Commercial Fee").  A screen capture
of Getty's website showing the Commercial Fee applied to one of the Infringed B.B. King
Photographs is attached hereto and fully incorporated herein as Exhibit 24.

50.     By offering the Commercial Fee at this substantial rate, Getty clearly recognized the historical significance and uniqueness of the Infringed B.B. King Photographs, and therefore applied a historical premium fee for any commercial use of these photographs by its customers. Upon information and belief, Getty, at one time, offered the Infringed B.B. King Photographs for commercial use for a fee no less than the Commercial Fee.

51.     The number of Commercial Fees paid to Getty by its customers for commercial uses of the Infringed B.B. King Photographs is unknown.  However, Craig, through his own investigation, was able to ascertain that several of the Infringed B.B. King Photographs have been licensed by Getty to third parties as product packaging in connection with at least five (5) independent CD's and one (1) DVD plus books and magazines related to B.B. King.  The fees paid by these licensees to Getty for the product package uses are unknown.  A copy of the CD's and DVD being sold using several of the Infringed B.B. King Photographs is attached hereto and fully incorporated herein as Exhibit 25.

**d.  Craig's Second Notice of Willful Infringement.**

52.      On July 2, 2015, six weeks after B.B. King's death, Craig, through another attorney, contacted Getty to demand removal of the Infringed B.B. King Photographs from Getty's website (the "Second Demand").  A copy of the Second Demand is attached hereto and fully incorporated herein as Exhibit 26.

53.     Notwithstanding the Second Notice, Getty continued to license the Infringed B.B. King Photographs, and continues to do so in violation of Craig's rights.  Craig never himself published nor authorized any third party to publish the Infringed B.B. King Photographs.  Craig was never aware that ABC-Dunhill used the Infringed B.B. King Photographs for its B.B. King tour books or the ABC-Dunhill Publicity Uses until May 2014, while researching B.B. King in

13

connection with a potential B.B. King exhibition to be held by Leica Camera in Photokina, Germany in September 2014.

54.     The physical copies of the Infringed B.B. King Photographs related to ABC-Dunhill's uses were later stolen by Ochs during his employment with ABC-Dunhill. Ochs assumed false ownership of the photographs over the next 40 years and later sold the Ochs Archive, which contained the Infringed B.B. King Photographs to Getty. Getty, in acquiring the Ochs Archive, seems to have either known that there were no copyrights granted in the sale or disregarded the significant ownership concerns related to its photographs, which were the same concerns that caused Corbis to never even consider Ochs's offer of sale.

55.     In the same manner, Getty purchased physical copies of the Infringed B.B. King Photographs from Charlie Gillet as well, which like the Ochs Archive, had significant concerns of ownership that Getty knew or should have known about.

56.     Given its prominence in the photography licensing business, Getty knew or should have known that Ochs and Charlie Gillet could not have possibly conveyed all rights in the photographs contained in their respective archives. Getty, nonetheless, disregarded these substantial risks and purchased the Ochs Archive and the Charlie Gillet Collection to extensively license the photos contained in each, including the Infringed B.B. King Photographs, in violation of Craig's registered copyrights.

## FIRST CLAIM FOR RELIEF
### Copyright Infringement, 17 U.S.C. §§ 106, 501
### (As to Getty)

57.     Craig fully hereby incorporates Paragraphs 1 through 56 of this Complaint as if fully set forth herein.

58.     Craig is proprietor of all right, title and interest in and to the copyrights of the

Infringed B.B. King Photographs subject to the Registrations pursuant to 17 U.S.C. §411(a). The Infringed B.B. King Photographs are the subject of valid Certificates of Copyright Registration issued by the Register of Copyrights.

59.     Under 17 U.S.C. §106, Craig has the exclusive right to publish, reproduce and distribute the Infringed B.B. King Photographs.

60.     The Infringed B.B. King Photographs are copyrightable subject matter under the laws of the United States.

61.     Getty infringed Craig's exclusive rights as the copyright owner of the Infringed B.B. King Photographs by reproducing, publicly displaying and distributing to its customers through paid licenses the Infringed B.B. King Photographs without Craig's consent in each case.

62.     Getty's infringements were willful. Getty was provided the First Notice and Second Notice by Craig and, notwithstanding these notices, continued to license the Infringed B.B. King Photographs without Craig's consent in willful violation of his rights.

63.     Even prior to the First Notice and the Second Notice, Getty's actions of licensing the Infringed B.B. King Photographs were also willful. Getty either knew or should have known about the significant ownership concerns related to the Ochs Archive and Charlie Gillett Collection. Neither Ochs nor Gillet were ever photographers by profession and were known to only hold physical copies of photographs created by other photographers. With respect to Ochs, it was widely known, even reported by *The New York Times*, that Ochs's sole claim to many of his Photographs was his simple possession of physical copies, which he obtained from the files of failed record labels. This concern caused Corbis to immediately reject Ochs's offer of sale. Ochs's and Gillet's possession of physical copies of photographs granted neither of them ownership rights in and to the Infringed B.B. King Photographs, including copyrights therein.

64.     Upon information and belief, Getty, as a leader in the photography licensing business and through its numerous archival acquisitions, knowingly disregarded these concerns in favor of securing potentially tens of millions of dollars in license fees once it obtained ownership of the Ochs Archive and Charlie Gillet Collection, even if it violated the rights of photographers, such as Craig.

65.     Upon information and belief, rather than conduct proper due diligence into the significant ownership concerns of the Ochs Archive and Charlie Gillet Collection, Getty recklessly proceeded to purchase both archives and began licensing the photographs contained therein, including the Infringed B.B. King Photographs, to its customers for both commercial and editorial uses in violation of Craig's copyrights.  Craig has been damaged as a result.

66.     Accordingly, Craig prays for an order awarding statutory damages pursuant to 17 U.S.C. §504(c) of up to $150,000 per infringement.

67.     Craig is further entitled to an injunction pursuant to 17 U.S.C.A. §502 to prevent and restrain infringement by ordering Defendant not to publish, display, distribute, or in any way disseminate the Infringed B.B. King Photos.

**SECOND CLAIM FOR RELIEF**
**Copyright Infringement, 17 U.S.C. §§ 106, 501**
**(As to All Remaining Defendants)**

68.     Craig fully hereby incorporates Paragraphs 1 through 67 of this Complaint as if fully set forth herein.

69.     Craig is proprietor of all right, title and interest in and to the copyrights of the Infringed B.B. King Photographs subject to the Registrations pursuant to 17 U.S.C. §411(a).  The Infringed B.B. King Photographs are the subject of valid Certificates of Copyright Registration issued by the Register of Copyrights.

16

70.     Under 17 U.S.C. §106, Craig has the exclusive right to publish, reproduce and distribute the Infringed B.B. King Photographs.

71.     The Infringed B.B. King Photographs are copyrightable subject matter under the laws of the United States

72.     Defendants infringed Craig's exclusive rights as the copyright owner of the Infringed B.B. King Photographs by reproducing and publicly displaying the Infringed B.B. King Photographs without Craig's consent in each case.  Upon information and belief, the Defendants addressed hereunder obtained the Infringed B.B. King Photographs from Getty for their respective unlawful uses.

73.     Accordingly, Craig prays for an order awarding statutory damages pursuant to 17 U.S.C. §504(c) of up to $150,000 per infringement.

74.     Craig is further entitled to an injunction pursuant to 17 U.S.C.A. §502 to prevent and restrain infringement by ordering Defendant not to publish, display, distribute, or in any way disseminate the Infringed B.B. King Photos.

### Prayer for Relief

WHEREFORE, Craig prays that this Court enter judgment in his favor and against Defendants:

1.     Finding that Defendants have infringed Craig's exclusive rights in the Infringed B.B. King Photographs, pursuant to 17 U.S.C. § 106;

2.     Granting Craig permanent injunctive relief enjoining Defendants from reproducing, displaying or selling, or offer for sale, or otherwise distributing the Infringed B.B. King Photographs;

3.     Granting Craig statutory damages in the maximum amount allowed by law, or,

alternatively, at Craig's election, actual damages suffered by Craig and any gain, profits and advantages derived by Defendants arising out of or related to copyright infringement of the Infringed B.B. King Photographs, pursuant to 17 U.S.C. §504, in amounts to be proven;

4.      Directing Defendants to reimburse Craig's attorneys' fees and costs in this action, pursuant to 17 U.S.C. § 505; and

5.      Granting such other and further relief as the Court deems proper and just.


Dated:    New York, New York            PELOSI WOLF EFFRON & SPATES LLP
          December 19, 2017

                                        By: _____
                                            John Pelosi, Esq.
                                            Angelo DiStefano, Esq.
                                            The Woolworth Building
                                            233 Broadway, 22nd Floor
                                            New York, NY 10279
                                            Phone: (212) 334-4801
                                            Facsimile: (212) 571-9149

                                        *Attorneys for Plaintiff, Glen Craig*